UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FERNANDO LEON ALVAREZ,

Petitioner,

v.

JULIO HERNANDEZ ET AL,

Respondent.

Case No. 2:26-cv-02207-TLF

ORDER GRANTING HABEAS CORPUS IN PART AND DENYING IN PART

Petitioner, Fernando Leon Alvarez, filed this federal habeas corpus petition under 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). *Id.* The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 4.

Petitioner alleges that his arrest "without a valid warrant and without an individualized assessment of his flight risk" violated the Immigration and Nationality Act (INA), the Administrative Procedure Act (APA), and the Fourth Amendment, as well as the Due Process Clause of the Fifth Amendment. Dkt. 1 at 19; Dkt. 7 at 2, Dkt. 9 at 2, 8. Petitioner requests (1) immediate release, or (2) an individualized determination, and a meaningful opportunity to be heard, of his eligibility for release within three days of this Order, or (3) a hearing before this Court to determine whether petitioner presents a flight risk or danger that justifies continued detention. *Id*. Petitioner also requests attorney's fees. *Id*.

The Court requested, and received, supplemental briefing on the Due Process claim. Dkts. 8-10.

Respondents agree petitioner is a member of the *Rodriguez Vazquez* class. Dkt. 10 at 3; *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. July 30, 2026).

Respondents contend petitioner was detained pursuant to an administrative warrant for arrest, and they argue that even if petitioner were arrested on an invalid warrant, immediate release would not be the appropriate remedy. Dkt. 5 at 2. Instead, they argue he is entitled to a bond hearing under 8 U.S.C. §1226(a), consistent with the Court's judgment in *Rodriguez Vasquez*. Dkt. 5 at 6. They also argue that the Fourth Amendment does not provide a basis for release from custody for an allegedly unlawful arrest, the Court lacks jurisdiction over the APA claim, and that petitioner is not entitled to injunctive relief. Dkt. 5 at 6-8.

## BACKGROUND

Petitioner has lived continuously in the United States for more than 24 years. Dkt. 1-2, Declaration of Fernando Leon Alvarez at ¶ 2.[1] His significant other is a U.S. citizen, he is the father of three U.S. citizen children, ages three to fifteen, and his fourth and eldest child is a lawful permanent resident. Dkt. 1-2 at 1. Mr. Leon Alvarez worked for the past seven years at a landscaping company and paid taxes. *Id.* at 3.

The parties disagree about the circumstances of petitioner's arrest. Respondents contend that, on May 22, 2026[2], ERO identified petitioner as a citizen and national of

[1] The petition contains a typographical error – it states petitioner entered approximately March 28, 20<u>2</u>2. Dkt. 1 at 2 (emphasis added). The next paragraph states he has been in the United States for 24 years, and his declaration states he's been in the United States since 2002. *Id.*; Dkt. 1-2, Leon Alvarez Decl. ¶ 2.

[2] The Form I-213 states petitioner was arrested on March 19, 2026 at approximately 7:02 AM. Dkt. 6-1, Form I-213 at 2. Earlier on the same page, the Form states, "On May 22, 2026, ERO Seattle identified

Mexico who had unlawfully entered the United States on an unknown date and at an unknown place. Dkt. 6-1, Form I-213 at 2; Ex. 6-3, Notice to Appear at 1 (issue date of May 22, 2026). ERO system checks reflected no pending or approved immigration applications permitting petitioner to remain in the United States and confirmed a prior criminal history. *Id*.

Based on this information, an ERO supervisor issued a Warrant of Arrest of Alien (Form I-200). Dkt. 6-2, Form I-200. The sequence of events remains unclear as to when the officers queried the system, issued a warrant, and arrested petitioner. Petitioner contends the warrant was provided to him only after his arrest.

According to petitioner, at approximately 7:00 a.m., ICE ERO officers arrested petitioner outside his residence. Dkt. 1-2 at 2. Petitioner alleges that the officers asked whether his name was "Francisco," to which he responded that it was not. *Id*. When asked whether he was "Leon Alvarez," petitioner confirmed that he was. *Id*. He asserts that the officers gave him Miranda warnings and he invoked his right to remain silent. *Id*.

Respondents contend that officers located him standing near a vehicle registered in his name. Dkt, 6-1, Form I-213. They contend petitioner initially provided a false name and did not have identification. Dkt. 5 at 4. According to respondents, officers confirmed his identity using a previously obtained photograph, told him that a warrant had been issued for his arrest, and placed him in handcuffs. *Id*.

Petitioner states he was arrested once, in 2009, and charged with driving with a suspended license because he had failed to pay for tickets he had received for a lack of

---

Leon Alvarez as a citizen and national of Mexico who illegally entered the country at an unknown time and place…" All other references indicate petitioner was arrested on May 22, 2026.

car insurance. Dkt. 1-2, Leon Alvarez Decl. ¶¶ 4, 8. He states he paid the ticket, his license was restored, and he has not had any subsequent issues with his license or insurance. *Id*.

The Form I-213 states that he was arrested on February 11, 2009 for driving without a license and sentenced to a term suspended 90 days in jail with a $1,000 fine. Dkt. 6-1, Form I-213 at 3.

Petitioner alleges that the officers did not provide him with any notice at the time of his arrest besides stating that he was being arrested for being in the country illegally. Dkt. 1 at 2; Dkt. 1-2, Leon Alvarez Dec. ¶ 6. He asserts "I did not receive the Notice to Appear I-862 and the I-213 and I-831 until several days later, when I was already detained." Dkt. 1-2 ¶ 8. Petitioner alleges that, before arresting him, the officers "made no particularized inquiry as to whether he was a flight risk, nor did they ask about his ties to the community, nor provide him an opportunity to demonstrate that he did not pose a flight risk." Dkt. 1 at 10. He further alleges that the ERO officers failed to document any particularized facts supporting his arrest or detention. *Id*.

According to respondents, petitioner stated during questioning that he had unlawfully entered the United States. Dkt. 5, Return Memorandum at 4-5. After reviewing his case, ERO determined that petitioner was eligible for voluntary departure, but petitioner declined that option and requested a hearing before an immigration judge (IJ). *Id*.; Dkt. 6-4, Notice of Rights.

Department of Homeland Security ("DHS") then served petitioner with a Notice to Appear ("NTA") Form I-862, stating he is an alien present in the United States who had not been admitted or paroled and charging him as subject to removal under INA

212(a)(6)(A)(i). Dkt. 6-3, Notice to Appear. The form states the notice was provided in Spanish. *Id*. at 3.

He was issued a Notice of Rights and Request for Disposition at 8:00 AM on May 22, 2026, which states he requested a hearing before the Immigration Court. Dkt. 6-4. On the certificates of service of the warrant and for the Notice of Rights, where petitioner requested a hearing before the Immigration Court, the officer filled in the form stating it was read to petitioner in Spanish. Dkt. 6-2 at 2, Dkt. 6-4 at 1. Yet the I-213 Form states the Form I-826 was read to him in English. Dkt. 6-1 at 3. Petitioner alleges that he was not provided explanatory documents while in detention, that no one read the paperwork to him in Spanish, and that he "had no idea what I signed.". Dkt. 1 at 2; Dkt. 1-2, Leon Alvarez Dec. ¶¶ 6, 8; Dkt. 6-1, Form 1-213.

He was also issued a warrant for arrest. Dkt. 6-2, Form I-200. The warrant for arrest is dated the same day as the arrest, May 22, 2026, and signed by SDDO C. Shields, stating that petitioner's identity was biometrically confirmed and that "other reliable evidence" affirmatively indicate lack of immigration status or that he is removable. Dkt. 6-2, I-200 at 2.

This warrant also includes a finding that Officer Warner "determined that there is probable cause to believe that [petitioner] is removable from the United States"; and a verification that the warrant was served on, and read to petitioner in Spanish on May 22, 2026, by an officer whose printed name and signature is illegible. *Id.* There is no name or number of any interpreter provided. *Id.*

## DISCUSSION

### A. Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). After applying the test, the Court held "1226(a)'s procedures satisfy due process, both facially and as applied to [petitioner]." Even so, the Court expressly stated:

> "In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures. "Due process is a flexible concept that varies with the particular situation." *See Yagman*, 852 F.3d at 863 (quoting *Shinault v. Hawks,* 782 F.3d 1053, 1057 (9th Cir. 2015)). The government agrees that its position here does not mean detained aliens can never bring as-applied due process challenges to § 1226(a)."

*Id*. at 1213-14.

The Court requested supplemental briefing on the Due Process issues. Dkt. 9. Respondents argue that petitioner is not entitled to a pre-deprivation hearing because he “had never previously been detained or released by immigration officials.” Dkt. 10 at 4. According to respondents, petitioner’s immigration proceedings commenced because of his May arrest, and there is no evidence that ICE had previously created an “implicit promise” concerning petitioner’s liberty in the United States. *Id*. Respondents therefore contend that the Court should not rely on “re-detention” cases in determining the appropriate relief. *Id.*

Petitioner asserts he was apprehended by immigration officials at the time of his initial entry and sent back to Mexico as a voluntary return; about a week later, he entered the United States. Dkt. 1-2, Leon Alvarez Decl. ¶ 2-3. He had no other contact with immigration officials until he was arrested and detained on May 22, 2026.

The *Mathews* test applies to initial immigrations arrests and detentions, because the Fifth Amendment Due Process Clause protects the liberty interests of noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (“[T]he Due Process Clause applies to all “persons” within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent); *see Moncebais v. Bondi*, No. 5:26-CV-268, 2026 WL 1862153 (S.D. Tex. Mar. 27, 2026) (applying the *Mathews* balancing test and ordering immediate release of a petitioner detained pursuant to 8 U.S.C. § 1225(b)(2) who had lived continuously in the United States for 32 years.).

Accordingly, the Court will consider each *Mathews* factor to determine whether petitioner's arrest and detention comport with constitutional due process requirements.

**A. Private Interest**

As to the first factor, a liberty interest protected by due process "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; on the other hand, a liberty interest may "arise from an expectation or interested created by state laws or policies. . . ". *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005); *Ingraham v. Wright,* 430 U.S. 651, 672-73 (1977). The right to liberty under the Fifth Amendment has been held to be a human right, to include freedom from bodily restraint and punishment. *Rochin v. California,* 342 U.S. 165, 169-170 (1952); *see also United States v. Salerno,* 481 U.S. 739, 748-750 (1987) (due process is satisfied if detention decision is based on a finding of future dangerousness when the hearing process includes: defendant is represented by counsel, the burden is on the government to show future dangerousness by clear and convincing evidence, and there is adversarial testing in a hearing conducted by a neutral judicial officer, with procedural protections that protect the liberty interest of a criminal defendant in the pretrial new arrest phase of the case).

Petitioner has been in the United States continuously since 2002. He is the father of three United States citizen children, ages three to fifteen, and a fourth child, his eldest daughter, is a lawful permanent resident. Dkt. 1-2, Leon Alvarez Decl. ¶ 5. His first interaction with immigration authorities since his voluntary return 24 years ago was when ICE arrested and detained him. *Id*. ¶ 3.

Respondents contend petitioner's liberty interests must be considered "significantly diminished" because he has been living "unlawfully in the country for four years, a

relatively short period of time" and he made no attempt to obtain valid immigration status prior to his detention. Dkt. 10 at 2. Yet, the record shows petitioner has been in the United States for over 24 years and is the main breadwinner for his family. Dkt. 1-2, Leon Alvarez Decl. ¶ 2,9.

Constitutionally protected interests in liberty are strengthened as noncitizens establish lives in the United States, even without permission from the government to reside here. *Moncebais v. Bondi*, 2026 WL 1862153, at *11 n.8 (citing *Zafra v. Noem*, No. EP-25-CV-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025) (collecting cases) and *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997) (holding that the Due Process Clause "protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community." ).

This Court agrees with the reasoning of *Moncebais*: "[I]t follows that liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government." *Moncebais*, at *5

Respondents also argue his liberty interest should be considered less weighty because he would be eligible for a custody review hearing conducted by an immigration judge. Dkt. 10 at 3. The fact that the statute provides a later bond hearing before an immigration judge does not necessarily cure the initial due process violation. *See Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE

failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance")).

Accordingly, the first factor favors petitioner.

**B. Risk of Erroneous Deprivation**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit held that "the existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation. *Rodriguez Diaz*, 53 F.4th 1209. The Court stated:

> "Pursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8).[3] This involved evaluating [petitioner's] likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons."

*Id.*

Multiple courts have held that § 1226(a) requires an individualized custody determination *before* detention. *See, e.g.*, *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("…section 1226(a) affords

[3] The provision reads: "Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding. Such an officer may also, in the exercise of discretion, release an alien in deportation proceedings pursuant to the authority in section 242 of the Act (as designated prior to April 1, 1997), except as otherwise provided by law." 8 C.F.R. § 236.1(c)(8).

[petitioner] an initial custody determination before exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk."); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020) (holding that, before detention "§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination"); *Lopez Benitez v. Francis,* 795 F. Supp. 3d at 493 ("If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk."); *Curimilma Quille v. Blanche,* No. 26-CV-2818 (HG), 2026 WL 1453889 , *4-*5 (E.D.N.Y. May 22, 2026) (holding petitioner was denied due process because ICE's initial custody determination was inadequate and 1226(a) requires an individualized custody determination); *Dos Reis v. McShane*, 2026 WL 1746649, at *4 ("The initial [1226(a)] custody determination requires "an individualized determination as to ... whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'").

Here, no evidence in the record suggests that ICE made an individualized custody determination before or contemporaneously with petitioner's detention. As petitioner notes, "[t]he Form I-213 description of Mr. Leon Alvarez's arrest provides no individualized rationale for his detention." Dkt. 7 at 10.

According to the Form I-213, petitioner was arrested because he was the registered owner of a 1998 Honda Civic Accord. Dkt. 6-1, Form I-213 at 2. The form states petitioner had no prior immigration history, and petitioner argues that he "could not have been identified as either a citizen or non-citizen through the immigration systems." Dkt. 7 at 7. Petitioner contends, "[i]n reading [the] Form I-213, it appears that ICE discovered a man, with a Spanish last name, who had no pending or approved immigration applications, and decided on that basis that he must be in the United States unlawfully." *Id*. at 8.

Respondents offer no contemporaneous record demonstrating that an authorized ICE officer made an individualized determination that petitioner posed a flight risk or danger sufficient to justify detention rather than release. *See Dos Reis*, 2026 WL 1746649, at *5 (ordering release and holding "[a] contemporaneous, individualized custody determination would require ICE to explain why detention, rather than release on conditions, is necessary for this Petitioner. It would also create a record that permits meaningful review of whether the required procedure occurred."). "Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk." *Pablo Sequen v. Albarran,* No. 25-cv-06487-PCP, 2025 WL 2935630, at *7 (N.D. Cal. Oct. 15, 2025).

Accordingly, the second factor favors petitioner.

**C. The Government's Interest**

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). "The Supreme Court has

instructed that in a *Mathews* analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id.* (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Court adopts the reasoning set forth in *Dos Reis*:

> "The Government has legitimate interests in ensuring appearance at removal proceedings and protecting the community. *See Zadvydas*, 533 U.S. at 690. Those legitimate interests, however, support detention only when the Government connects them to the individual detainee. The Government has not shown Petitioner is dangerous. Nor has it shown that he poses a flight risk that cannot be mitigated by bond or conditions. The process § 1226(a) contemplates—requiring ICE to make and document a particularized custody determination—imposes no undue burden. On balance, Petitioner's continued detention violates the Due Process Clause"

*Dos Reis,* 2026 WL 1746649, *5.

Accordingly, all three Mathews factors favor petitioner.

The Court also finds a post-deprivation bond hearing is an inadequate procedural safeguard. The purpose of habeas corpus is to return the petitioner "to the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia,* 734 F.3d 917, 935 (9th Cir. 2013) (simplified; citing *Nunes v. Mueller,* 350 F.3d 1045, 1057 (9th Cir. 2003)). Immediate release is appropriate because petitioner's continued

detention violates his Fifth Amendment right to due process.[4] Because the Court has analyzed and granted relief based on the *Mathews* factors, under Fifth Amendment due process as applied to the circumstances here, the Court declines to address the remaining issues, and denies the petitioner's request for an evidentiary hearing in the U.S. District Court.

For all these reasons, the Court GRANTS IN PART and DENIES IN PART petitioner's habeas petition.

1) Respondents **ARE ORDERED TO** release petitioner **within 24 hours** of this Order.
    a. Respondents may issue appropriate conditions of release as determined by respondents.
    b. Alternatively, if respondents do not issue reasonable conditions of release within 24 hours, they must release petitioner without conditions.
2) Within two business days of petitioner's release, respondents must file a certification with this Court confirming the date and time petitioner was released from custody.
3) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining

[4] Courts in other districts have held petitioners who have been living in the United States for many years, sometimes decades, and have been detained under 1226(a) are entitled to immediate release, rather than an initial bond hearing. *See Caal Coc v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-2387-DC-DMC-HC, 2026 WL 1651022 (E.D. Cal. June 8, 2026)(collecting cases in which the court has ordered immediate release of petitioners who were not previously afforded parole), *report and recommendation adopted*, No. 1:26-CV-02387-DC-DMC (HC), 2026 WL 1816128 (E.D. Cal. June 24, 2026); *Dos Reis v. McShane,* No. CV 26-3775, 2026 WL 1746649 (E.D. Pa. June 17, 2026).

petitioner unless and until he is provided with adequate notice and a hearing, consistent with due process, before an immigration court to determine whether re-detention is appropriate.

4) Petitioner may file a motion with a request for attorney fees and costs under the Equal Access to Justice Act, within 30 days of final judgment. See 28 U.S.C. § 2412 (d).

…

Dated this 2nd day of September, 2026.

Theresa L. Fricke
United States Magistrate Judge